UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA,

                      Plaintiff,

   -against-

DWAYNE STONE, JAMES MCTIER,
JOSE NIEVES, JOSIAH MCTIER,
GARETH VIALVE, SHARIEF RUSSELL,
TRAVIS SCOTT

                      Defendants.
-------------------------------------------------x

MEMORANDUM AND ORDER
05-CR-401 (ILG)

GLASSER, United States District Judge:

## INTRODUCTION

In this Memorandum and Order, the Court considers two motions to sever. Sharief Russell ("Russell") moves for a separate trial on the ground that his case is improperly joined under Fed.R.Crim.P. Rule 8(b) and, in the alternative, because joinder is prejudicial under Fed.R.Crim.P. Rule 14. Defendant Josiah McTier ("McTier")[1] moves to sever under Rule 14, and also argues that joinder will violate his statutory and constitutional rights to a Speedy Trial. Both parties assert that a joint trial will prejudice them because of (1) prejudicial evidentiary spillover, and (2) prejudice in being tried before a "death-qualified" jury for non-death-eligible crimes. While the Court was reviewing these motions, the government submitted a superseding indictment

---

[1] James McTier, Josiah McTier's brother, is also a defendant in this case. All references to "McTier" in this Order, however, refer only to Josiah McTier, one of the movants here.

1

that charged Russell under the racketeering and racketeering conspiracy counts, as well as murder in aid of racketeering in Count 25, thus eviscerating the basis of his motion. (11-02-2005 Superseding Indictment, Counts 1 & 2). The following discussion therefore applies primarily to McTier's motion.

For the following reasons, both defendants' motions to sever are denied.

## **BACKGROUND**

For the purposes of this motion, the Court recounts only that portion of the record relevant here. Russell and McTier are two of seven individuals initially charged in a twenty-six count indictment of May 25, 2005, alleging a range of offenses including racketeering, racketeering conspiracy, murder in aid of racketeering, conspiracy to murder in aid of racketeering, attempted murder in aid of racketeering, assault in aid of racketeering, and numerous firearm counts. Although neither Russell nor McTier were charged in the May 25, 2005 Indictment under counts one and two--racketeering and racketeering conspiracy, respectively–a superseding indictment was returned on November 2, 2005 that charged Russell with racketeering and racketeering conspiracy, as well as an additional murder charge as a racketeering act.[2] Aside from the aforementioned change to the charges against Russell, the charges against these defendants remain essentially the same as in the original indictment. McTier is charged in counts ten and eleven. Count ten charges attempted murder in aid of racketeering

---

[2] Although the first several counts in the superseding indictment remain essentially the same as those in the May 25 Indictment, the final counts have been renumbered to incorporate the additional count charged against Russell. Count 25 charges murder in aid of racketeering, stating that "defendant Sharief Russell...for the purpose of maintaining and increasing his position in the Folk Nation, an enterprise engaged in racketeering activity, did knowingly and intentionally murder Randolph Gatlin..." (11-02-2005, Sup. Ind., Count 25). Count 26 charges the intentional use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924. (Id., Count 26).

2

under 18 U.S.C. §§ 1959(a)(5) and 3551 et seq., and count eleven charges use of a firearm under 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 3551 et seq. Specifically, it alleges that McTier, "together with others, for the purpose of maintaining and increasing their positions in the Folk Nation, an enterprise engaged in racketeering activity, did knowingly and intentionally attempt to murder one or more other persons..." (5-25-2005 Indictment, ¶ 40). Russell is charged with the same crimes, although stemming from separate incidents, in counts twenty-seven and twenty-eight. (Id. ¶ 65).

Both defendants moved for separate trials, asserting that they were improperly joined, joinder is prejudicial, and/or joinder will deny them a right to a speedy trial. Russell's motion was made moot by the November 2 Superseding Indictment and is therefore denied, although his 8(b) claim is briefly mentioned.

## DISCUSSION

### I. Legal Standard for Motion to Sever

### A. Analysis under Rule 8(b)

Only defendant Russell asserts that the government has improperly joined him under Rule 8(b). This Court has recently dealt with virtually identical challenges. See, e.g., United States v. Coffey et al., 361 F.Supp.2d 102 (E.D.N.Y. 2005) (Glasser, J.); United States v. Bellomo, 263 F.Supp.2d 561 (E.D.N.Y. 2003) (Glasser, J.); United States v. Imbrieco, 2003 WL 1193532 (E.D.N.Y. 2003) (Glasser, J.); United States v. Rucker, 32 F.Supp.2d 545 (E.D.N.Y. 1999) (Glasser, J.). In his motion, defendant Russell asserted that because he was not named in either the racketeering or racketeering conspiracy counts, and because the acts which he was alleged to have committed occurred several years after the acts in indictment, joinder was improper

3

under Rule 8(b) of the Federal Rules of Criminal Procedure. The superseding indictment now charges him with both racketeering and racketeering conspiracy, eliminating the basis for this motion. When a defendant is asserted to be a member of the exact same conspiracy or racketeering network as his co-defendants it is proper to join them under Rule 8(b). If the court finds that the prosecution satisfies the Rule 8(b) limitations, then the issue of severance is determined by reference to Rule 14. (Rucker, 32 F.Supp.2d at 548).

**B. Prejudice Analysis Under Rule 14**

Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) reaffirmed the preference for joint trials of defendants who are indicted together. As this Court echoed the Supreme Court in Rucker:

> The liberal rule of joinder is designed to promote efficiency and 'serve[s] the interest of justice by avoiding the scandal and inequity of inconsistent verdicts.' Joint trials, in addition, limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury.
> (citations omitted).

Rule 14(a) provides for relief from prejudicial joinder "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

This Court has noted that "severance and other similar relief rests entirely in the discretion of the court." Rucker, 32 F.Supp.2d at 548 (citing, e.g., United States v. Losada, 674 F.2d 167 (2d. Cir. 1982); United States v. Lasanta, 978 F.2d 1300, 1306 (2d Cir. 1992)). Nevertheless, Zafiro has provided some guidance in this discretion:

4

[A] district court should grant a severance…only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant…When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." 506 U.S. at 539.

The Zafiro Court and others have noted other considerations when deciding a motion to sever. First, limiting instructions will frequently cure the risk of prejudice. (Id., at 539-40). Second, the fact that defendants might, for whatever reason, fare better in separate trials is not enough to justify severance. (Id.). Third, the Second Circuit has recognized that differing levels of culpability do not justify severance. See, e.g., United States v. Chang An-Lo, 851 F.2d 547, 556-57 (2d Cir. 1988), cert. denied, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988).

**1. Admission of Otherwise Inadmissible Evidence**

Both defendants contend that evidence otherwise inadmissible as to them will be admitted to prove crimes with which they are not charged. The defendants' concerns are that evidence of other crimes, including gruesome ones, would be heard by the jury. Specifically, they fear that the jury would "hear evidence of the codefendants' commission of a multitude of murders, attempts to murder, violent assaults and related offenses" (9-27-2005 Letter from Frederick L. Sosinsky to Judge Glasser ("McTier Mot.") 3). They also anticipate that "emotionally charged detailed evidence of the many murders and attempts to murder…will be presented, including gruesome crime scene photos of the many victims." (Id.).

5

McTier's motion fails for several reasons.[3] First, evidence of other murders committed by fellow Folk Nation members can be introduced to prove that Folk Nation was engaged in racketeering activity. See, e.g., United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992). Because this evidence can be introduced in order to prove the charges against McTier, who is accused of attempted murder in aid of racketeering, it cannot, by definition, be considered prejudicial.

Defendants seek to rebut this argument by contending that even though evidence of those crimes could be introduced, the gruesome details could not be, presumably under Fed.R.Evid Rule 403. This argument implies that the jury could not separate one discrete crime from another, an assumption this Court rejects--at least not to the extent that such prejudice would counterbalance the federal interest in joint trials. More importantly, it assumes that no limiting instructions from the Court would cure the prejudice. The Court disagrees, and would issue those instructions should the matter arise on trial.

Defendants cite United States v. Williams, 181 F.Supp.2d 267, 302 (S.D.N.Y. 2001), among other cases, for the proposition that no limiting instructions will avoid prejudice to the jury. There, Judge Buchwald, in a well written opinion, severed a defendant charged with only narcotics conspiracy from a 17-Count indictment that included, murder, money laundering conspiracy, and racketeering. (Id., at 268, 301). In that case, the defendant severed was not charged with a single RICO count, and the

---

[3] As to Russell, it cannot but be noted that his indictment as a co-conspirator, as well as his indictment for a murder that now makes him death-eligible, moots his motion. Nevertheless, it bears noting that the reasons the Court cannot grant the motion against McTier apply a fortiori to Russell.

6

court concluded that evidence of murders committed in aid of racketeering would not have been admissible against her were she tried separately. (Id., at 302). Finally, the court reasoned that Fed.R.Evid. 403 would have prevented grisly evidence from being admitted against her in a separate trial, there was no limiting instruction that would prevent the evidence from prejudicing the jury, and that the existence of potential death penalty charges advised granting severance. (Id., at 303).

This Court finds the present case different for a number of reasons. First, all defendants are charged with significant crimes of violence, either murder or attempted murder. It is not, as in Williams, a case where one of the defendants is not charged with any violent crime at all. Second, limiting instructions can cure the alleged prejudice. The jury will be instructed that each defendant must be considered separately as to each count in which he is named. It must be assumed that juries follow the instructions given them by the trial judge. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Finally, there is no limiting principle in the defendants' argument. Were the Court to find prejudice sufficient to sever defendants each of whom is alleged to have been a member of a violent gang, and moreover, to have taken part in at least one murder or attempted murder in aid of racketeering, the federal system's strong preference for joint trials would be nullified. Indeed, the concern in Zafiro pertained to situations in which the defendants have "markedly different degrees of culpability." Zafiro, 506 U.S. at 539, 112 S.Ct. 933. Here, the discrete violent acts alleged are not "markedly different" from each other.

### 2. Death Penalty Bias

At the outset, it should be noted that the trial of a non-capital defendant before a

death-qualified jury does not, in and of itself, violate a defendant's Sixth Amendment rights. Buchanan v. Kentucky, 483 U.S. 402, 420 (1987). It should also be noted that this argument is little more than a more detailed iteration of the prejudice discussed above, and the arguments against severance apply equally here.

Relying again on Williams, defendants argue that the potential selection of a death-eligible jury should be considered, even though the government has not yet decided to seek the death penalty. The government's opposition is that the argument is not ripe, since it has yet to seek the death penalty against any of the defendants.

Other Courts have considered similar arguments in cases where the government has not yet sought the death penalty. (See, e.g., United States v. Jackson, 2003 WL 21787320 (S.D.N.Y. 2003); Williams, supra, 181 F.Supp.2d 267). Given the very real potential for a death penalty charge against at least some of the defendants, and the fact that this potential has immediate implications for the selection of attorneys and the amount of preparation required from all parties in the case, the Court finds the question ripe.

Examining the issue, the Court finds that severance is not appropriate in this case, and that the cases cited in defendants' briefs are not applicable, because they involve instances in which the severed parties played no role or only a minor role in the acts of violence that justified the death penalty. While McTier is not death-eligible, he is accused of having attempted to murder a rival gang member.[4] The difference between attempted murder and murder, however, is not the categorical difference observed in

---

[4] See Count 10 o the Superseding Indictment. (Sup. Ind. ¶¶ 41-42). Against Russell, the government could seek the death penalty for his alleged role in the murder of Randolph Gatlin, mooting his argument that he would be prejudiced by being tried alongside these defendants.

the cases to which defendants cite. (See, e.g., Williams, supra, at 301-3 (severed defendant only charged with narcotics conspiracy, not violent crime); Jackson, supra, at *1-*2 (the two death-penalty eligible defendants severed from other offenders who were charge with conspiring to distribute and possess cocaine as well as various individual counts of firearm violations); United States v. Maisonet, 1998 WL 355414 (S.D.N.Y. 1998) (RICO defendants charged with violent acts in a 19 defendant, 32 count indictment severed from non-RICO defendants charged with no violent crime).

The only case to which defendants cite in which severance is granted when co-defendants are both charged with violent crime is United States v. Rollack, 64 F.Supp.2d 255, 257 (S.D.N.Y. 1999). In that case, the four defendants moved for severance from Rollack, because of the 12 counts with which he alone was charged. Those counts included three murders, two conspiracies to commit murder and one attempted murder. (Id., at 257). Three defendants, Lazala, Gay, and Harris were charged with RICO violations, although it is not clear whether or not they included violent crimes. Judge Cedarbaum granted them severance because of the risk of prejudice, and the impact that a death-qualified jury might have upon the fundamental fairness of their trials. (Id., at 257). An additional defendant, Andino, was charged with attempted murder. Because, however, Rollack was the only defendant to have participated in the attempt, and because Andino was not charged with a pattern of racketeering, the court granted severance for him as well. (Id.).

McTier's strongest argument comes from the risk of prejudice he might suffer from being tried before a death qualified-jury. However, the Court believes that the institutional and public interest in a single trial, balanced against the only minimal risk

9

that a death-qualified jury will be more likely to convict, favors denying the motion. The crimes alleged here revolve around a particular racketeering conspiracy or involve the purpose of enabling particular defendants to increase their own or the power and prestige of the enterprise. McTier is charged with attempted murder and related firearms charge in aid of racketeering. Joint trial will prevent significant duplicitous litigation. Ultimately, a death-qualified jury is still charged with a duty to first determine the guilt or innocence of the individual based on the evidence presented in the case.

### 3. Brother Relationship will Create Bias

Finally, Josiah McTier indicates that the fact he is the brother of a co-defendant who is alleged to be one of the leaders of Folk Nation will cause specific prejudice to him. This Court rejected a similar argument in Bellomo, 263 F.Supp.2d at 577, where defendant argued for severance based on the fact that his father was a co-defendant. Provided the proper limiting instructions, the Court is confident that a jury could discern between the acts of one brother and the acts of another.

## C. Right to a Speedy Trial

Defendant Josiah McTier contends that unless his trial is severed from that of other defendants, he will suffer unconstitutional or unlawful pretrial delay. Defendant does not cite any case law, nor does he specifically indicate whether he asserts his rights under the Speedy Trial Act or the Sixth Amendment. Defendant argues that the delay will result from one of two sources. First, that the charges that defendant faces are not complex, and joining his defense with those of the other defendants will baselessly delay his case coming to trial. Second and relatedly, the government's contemplation of

whether or not it will seek the death penalty for the other defendants will also produce an unreasonable delay.

## 1. The Speedy Trial Act

The Speedy Trial Act provides detailed time limits within which prosecutors must bring the case to trial. The Statute has not been violated. In short, the Speedy Trial Act "requires that a defendant's trial begin within seventy days of his indictment or his first appearance before a judicial officer, whichever is later." United States v. Pena, 793 F.2d 486 (2d Cir. 1986) (citing 18 U.S.C. § 3161(c)(1)). There are exclusions from the 70-day limit. One of those exclusions, applicable here, is 18 U.S.C. § 3161(h)(7), which states that "[t]he following periods of time shall be excluded...[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." In other words, insofar as the defendant is properly joined, the reasonable delay attributable to one defendant is attributable to all. See United States v. Gambino, 784 F.Supp. 129, 138 (S.D.N.Y. 1992). This is substantiated by the Congressional Record which, as Judge Winter discussed in Pena, indicates that Congress did not intend to subject joint trials to the Speedy Trial Act. Pena, 793 F.2d at 489-90 (citing S.Rep. No. 1021, 93d Cong., 2d Sess. 38 (1974)). McTier may only argue that his rights under the Speedy Trial Act were violated if he can effectively argue that the delay attributable to the current proceeding is unreasonable. He cannot.

The Indictment was filed May 25, 2005. By June 6, 2005, the Court began to grant orders appointing counsel for the various defendants, a process that continued until August 1, 2005, when Carl Herman was assigned to represent the defendant James

11

McTier. A status conference for the present motions was held July 13, 2005, in which a scheduling order was made for briefing these motions. Furthermore, the Court has designated this as a complex case. All of these constitute reasonable delays under the § 3161(h) exceptions and should not be counted against the 70-day limit.

### 2. The Sixth Amendment

The Sixth Amendment also provides guarantees of a speedy trial.[5] Although unusual, it is possible for a delay that does not violate the STA to run afoul of the Sixth Amendment's guarantee of a speedy trial. United States v. Salimonu, 182 F.3d 63, 69 (1st Cir. 1999). The factors relevant to evaluating constitutional delay are (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice caused by the delay. (Barker v. Wingo, 407 U.S. 514, 530 (1972). The determination of "speedy trial" cannot be made with precision, and must be made in the context of the conditions of a particular case. (Id., at 520).

As to the first factor, the Second Circuit has found that a delay of 24 months was "considerably shorter" than those in which a constitutional violation was found. (United States v. Vasquez, 918 F.2d 329, 338 (2d Cir. 1990)). The "delay" in McTier's case has not even approached this barrier, and thus the first factor, which the Supreme Court in Barker described as a sort of "triggering mechanism" for the inquiry, favors denying the motion. (Barker, 407 U.S. at 530-1). The lack of unreasonable delay alone justifies denying the motion.

The lack of prejudice is another reason. Barker implies that delay, even if

---

[5] It says, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend VI.

12

extraordinary, will not give rise to a constitutional violation unless there is some prejudice stemming from that delay. In that case, trial was delayed for five years, which the Court found extraordinary. Nevertheless, it was not decisive since "prejudice was minimal" and "Barker did not want a speedy trial." Prejudice must come from the delay, and that delay must be significant. Although defendant asserts his right to a speedy trial, he does not allege significant prejudice arising from the delay itself. Allegations of spillover prejudice from otherwise inadmissible evidence against him does not constitute prejudice from the delay itself.

## **CONCLUSION**

For the aforementioned reasons, defendant Russell's motion to sever is denied as moot and defendant McTier's motion is denied on the merits.

SO ORDERED.

Dated:   February _____, 2006
         Brooklyn, New York

_____
I. Leo Glasser
United States District Judge